**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MITCHELL SCHUTT; JACKIE SCHUTT;
K.S.; and M.S.,

      Plaintiffs,

v.                                                    Case No. 6:12-cv-1697-Orl-37DAB

JERRY MORGAN LEWIS; CITY OF
OCOEE, FLORIDA; and ORANGE
COUNTY, FLORIDA,

      Defendants.

**ORDER**

This cause is before the Court on the following:

1. Defendant City of Ocoee's Motion for Summary Judgment (Doc. 104), filed February 28, 2014;

2. Defendant, Jerry Morgan Lewis, a/k/a Jeremy M. Lewis' Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 105), filed February 28, 2014;

3. Defendant, Orange County's Dispositive Motion for Final Summary Judgment as to Orange County (Doc. 107), filed February 28, 2014;

4. Plaintiffs' Response to Defendant City of Ocoee's Motion for Final Summary Judgment (Doc. 128), filed March 21, 2014;

5. Plaintiffs' Response to Defendant Jerry Morgan Lewis' Motion for Final Summary Judgment (Doc. 129), filed March 21, 2014;

6. Plaintiffs' Response to Defendant Orange County's Dispositive Motion for Final Summary Judgment (Doc. 133), filed March 21, 2014;

7. Defendant City of Ocoee's Reply to Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 150), filed April 4, 2014;

8. Defendant Jerry Morgan Lewis a/k/a Jeremy M. Lewis' Reply to Plaintiffs' Response to Defendant Jerry Morgan Lewis a/k/a Jeremy M. Lewis' Motion for Summary Judgment (Doc. 151), filed April 4, 2014; and

9. Defendant Orange County's Reply to Plaintiffs' Response to Orange County's Dispositive Motion for Summary Judgment (Doc. 152), filed April 4, 2014.

Upon consideration, the Court finds that the motions are due to be granted.[1]

## BACKGROUND[2]

On September 8, 2012, Defendant Jerry Morgan Lewis, an Ocoee police officer, drove to Plaintiffs' house to return a family member's misplaced identification card. (Doc. 141-1, p. 95.) He was armed with a gun, as well as a Taser and other less lethal weapons. (*Id.* at 32, 35.)

When he arrived at the house, Lewis knocked on the front door and then stepped back onto the lawn. (*Id.* at 99–101, 126–27.) He heard barking, and after a moment Plaintiff Jackie Schutt opened the door. (*Id.* at 100, 104, 126–27.) When she did, Plaintiffs' two American Boxers—Ali and Laila—exited the house. (*Id.* at 100; Doc. 105-3, p. 4; Doc. 142-8, ¶ 5.) Jackie Schutt called the dogs back, but only Ali listened; Laila ran towards Lewis. (Doc. 141-4, pp. 15–20; Doc. 142-7, ¶ 7.) Lewis stepped back and

---

[1] The Court previously granted Defendants motions for summary judgment. (Doc. 177.) This written Order explains the reasoning underlying that decision.

[2] The following factual allegations, derived from the record, are construed in the light most favorable to Plaintiffs; the actual facts of the case may be different from those stated here. See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

unholstered his gun. (Doc. 142-7, ¶¶ 9–10.) Jackie Schutt grabbed Laila's hind legs, stopping the dog's advance. (*Id.* ¶¶ 8–9; Doc. 141-4, pp. 20–24.) Nevertheless, Lewis shot Laila three times, killing her. (Doc. 142-7, ¶ 10; Doc. 142-8, ¶¶ 6, 8–9; Doc. 140-3.) The entire incident lasted approximately four seconds. (*See* Doc. 141-2, p. 202.)

After the incident, Lewis called his supervisor and reported that he had shot and killed a dog. (Doc. 141-1, p. 14.) Although Laila had never actually made contact with Lewis during the incident[3] (Doc. 142-7, ¶ 11; Doc. 142-8, ¶ 7), when the supervisor arrived, Lewis told him that Laila had bitten him. (Doc. 142-1, pp. 23–24.) The supervisor ordered Lewis go get medical treatment and then called Orange County Animal Services ("OCAS") to retrieve Laila's body for rabies testing. (*See id.* at 25–33.)

When the OCAS investigator arrived, Lewis' supervisor informed the investigator that Laila had been shot and killed during an attack on an officer. (Doc. 142-6, p. 41.) Based on this information, the OCAS investigator decided to obtain Laila's vaccination records from Jackie Schutt, photograph the scene, and take Laila's body to OCAS headquarters. (*Id.*) There, OCAS officials packaged the portions of Laila's body that were needed for rabies testing, then incinerated the remains. (Doc. 142-6, pp. 56, 65.) The next day, Jackie Schutt called OCAS and asked for Laila's body. (Doc. 141-5, p. 10.) A representative informed her of the incineration and offered her Laila's ashes, but she declined when she learned that Laila's remains had been incinerated alongside those of other animals, and thus the ashes would be mixed. (*Id.* at 10–11.)

Thereafter, Plaintiffs brought this action against Lewis, the City of Ocoee, and

---

[3] Whether or not Laila bit Lewis is hotly disputed (*see, e.g.*, Doc. 105-6), but for purposes of this Order the Court assumes that she did not.

3

Orange County. (Doc. 48.) Plaintiffs claimed that Defendants violated their constitutional rights and committed several tortious acts by shooting Laila and then destroying her remains. (*See id.*) Defendants each moved for summary judgment on the claims against them. (Docs. 104, 105, 107.) Plaintiffs opposed. (Docs. 129, 130, 133.) Defendants replied. (Docs. 150, 151, 152.) This matter is ripe for the Court's adjudication.

**STANDARDS**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Materiality of the facts depends on the substantive law applicable to the case. *See id.* To defeat a motion for summary judgment, the non-moving party must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant, *see Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), but may disregard assertions of fact that are "blatantly contradicted" by record evidence, *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

**DISCUSSION**

**I. Officer Lewis**

Based on Laila's shooting, Plaintiffs bring against Officer Lewis an unreasonable seizure claim under 42 U.S.C. § 1983 and several tort claims under Florida law. (Doc. 48,

¶¶ 61–69, 87–117, 165–72.) Lewis moves for summary judgment on all of those claims, arguing that his decision to shoot Laila was reasonable under the circumstances and was correspondingly non-tortious. (Doc. 105, pp. 6–11, 19–23.) The Court agrees.

With respect to the § 1983 claim, aggrieved parties may bring an action for damages against any person who, while acting under color of state law, deprives them of a right secured by the U.S. Constitution. 42 U.S.C. § 1983. In this case, Plaintiffs allege that by shooting and killing their pet dog Laila, Lewis deprived them of their Fourth Amendment right to be free from unreasonable seizure. (Doc. 48, ¶¶ 61–69.) Lewis concedes that his actions amounted to a seizure for Fourth Amendment purposes,[4] but argues that the seizure was reasonable under the circumstances. (Doc. 105, pp. 6–11.)

The reasonableness of a seizure is determined by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983). The touchstone for reasonableness in dog-shooting cases is typically officer safety. *See Carroll v. Cnty. of Monroe*, 712 F.3d 649, 652 (2d Cir. 2013). While the shooting of a pet dog is "a severe intrusion given the emotional attachment between a dog and an owner," ensuring officer safety is a "particularly significant governmental interest." *Id.* When officer safety is at issue, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*

---

[4] Although the U.S. Court of Appeals for the Eleventh Circuit has not yet addressed the issue directly, every Circuit to consider whether the shooting of a companion animal constitutes a seizure for Fourth Amendment purposes has held that it does. *See, e.g.*, *Carroll v. Cnty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (collecting cases).

*v. Connor*, 490 U.S. 386, 396 (1989); *see also Altman v. City of High Point*, 330 F.3d 194, 205 (4th Cir. 2003) (applying the *Graham* reasonableness standard in the context of a dog shooting). Importantly, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

Here, on Plaintiffs' best construction of the facts and with all reasonable inferences drawn in their favor, the Court finds that Lewis' actions were objectively reasonable. It is undisputed that when Laila ran past Jackie Schutt and into the yard, Lewis faced a rapidly approaching dog that was large, uncollared, and noncompliant with its owner's commands. (Doc. 105-3, p. 4; Doc. 141-1, p. 100; Doc. 141-4, pp. 15–20; Doc. 142-7, ¶ 7.) With only seconds to respond, Lewis chose to shoot Laila, and the Court cannot say that decision was unreasonable under the circumstances. *See Esterson v. Broward Cnty. Sheriff's Dep't*, No. 09-60280-CIV, 2010 WL 4614725, at *4 (S.D. Fla. Nov. 4, 2010) (finding that an officer's decision to shoot an unleashed dog that charged her in its owner's yard was objective reasonable).

The facts that Lewis had less lethal means of force available and that Jackie Schutt was able to get ahold of Laila's hind legs before she reached Lewis do not change the Court's conclusion. While in retrospect, trusting Jackie to keep Laila at bay or attempting to use less lethal force may have been preferable to shooting Laila, an officer's response need not be the best possible reaction under the circumstances to be considered reasonable. *See Altman*, 330 F.3d at 207. As the United States Court of Appeals for the Fourth Circuit observed under similar circumstances, "nonlethal force may have been

successful, but, tellingly, it may not have been." *Id.* The Fourth Amendment reasonableness calculus permits officers some leeway in "tense, uncertain, and rapidly evolving" situations, and in this case, Lewis acted within the bounds of his discretion.[5] *Graham*, 490 U.S. at 397. Accordingly, because the seizure here was reasonable under the circumstances, there was no Fourth Amendment violation, and Lewis is entitled to summary judgment on Plaintiffs' § 1983 claim.

This determination also forecloses the state-law tort claims against Lewis. Plaintiffs claim that by shooting Laila, Lewis committed the torts of trespass to chattel, conversion, and intentional infliction of emotional distress. (Doc. 48, ¶¶ 87–117, 165–72.) Trespass to chattel requires "the intentional use of, or interference with, a chattel which is in the possession of another, *without justification.*" *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. 4th DCA 1998) (emphasis added). Conversion requires "an *unauthorized* act which deprives another of his property permanently or for an indefinite period of time." *Mayo v. Allen*, 973 So. 2d 1257, 1258–59 (Fla. 1st DCA 2009) (emphasis added). Intentional infliction of emotional distress requires, *inter alia*, a deliberate infliction of mental suffering through conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985) (citation and internal quotation marks omitted).

Lewis moves for summary judgment on those tort claims on the ground that

---

[5] Plaintiffs suggest that the Court should take into account the fact that Lewis could have injured Jackie Schutt or her children, who were allegedly nearby when Lewis discharged his firearm. (*See* Doc. 129, p. 3.) However, the objective reasonableness inquiry is concerned only with the reasonableness of officer's actions "vis-à-vis the dogs." *Altman*, 330 F.3d at 205.

7

Plaintiffs have not produced any evidence that his actions were unjustified, unreasonable, or outrageous. (Doc. 105, pp. 19–23.) Plaintiffs respond that evidence of a Fourth Amendment violation demonstrates all three. (*See* Doc. 129, pp. 18–19.) They cite no authority for that proposition (*see id.*), but to the extent that such authority exists, the Court's determination that no Fourth Amendment violation occurred in this case is fatal to Plaintiffs' tort claims. Accordingly, Lewis is likewise entitled to summary judgment on the tort claims Plaintiffs raise against him.

## II.     Orange County

Next, the County moves for summary judgment on the claims against it—namely, that it committed the torts of trespass to chattel, conversion, and negligence when it removed Laila's body from Plaintiffs' property, tested it for rabies, then incinerated it. (Doc. 107.) The County argues that sovereign immunity bars those claims because the challenged acts involved discretionary government decisions related to the control of communicable diseases. (*Id.* at 14–17.) The Court agrees.

Although Florida Statutes § 768.28 waives sovereign immunity for most acts for which an individual would be liable in tort, "certain 'discretionary' governmental functions remain immune from tort liability." *Commercial Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1022 (Fla. 1979).

> [T]he term "discretionary" as used in this context means that the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning. An "operational" function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented.

*Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989). In other words, sovereign immunity is only waived "when the act of the government or its agent is not discretionary, but

8

operational in nature."[6] *Id.* at 736.

Here, Plaintiffs take issue with two of the County's decisions: (1) its decision to seize Laila's remains and prepare them for rabies testing without first "establishing" that she had bitten Lewis while improperly vaccinated; and (2) its subsequent decision to incinerate those remains that were not necessary to testing. (Doc. 133, pp. 11–13.) Both of those decisions were discretionary in nature, entitling the County to sovereign immunity.

First, when the County seized Laila's body for rabies testing, it did so as part of a cooperative effort with the Florida Department of Health ("FDOH") to prevent and control the spread of the rabies virus. (*See* Doc. 113-1, pp. 7–9, 24–32.) The FDOH promulgates rules related to the control of communicable diseases and works with local governments to enforce them. *See Fla. Stat.* § 381.0011(2), (3). In the case of potential rabies exposures, the FDOH authorizes county officials to "cause to be captured, confined or

---

[6] Throughout its response, Plaintiffs consistently rely on *Trianon Park Condominium Association, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985), for the proposition that sovereign immunity does not extend to acts that would have violated a duty of care existing under common law. (*See* Doc. 133, pp. 8–17.) This misreading of *Trianon* conflates two different means by which Florida courts determine governmental tort liability: the existence of an underlying duty of care, and the applicability of sovereign immunity.

> *Trianon* was not intended to, and did not affect [the Florida Supreme Court's] prior pronouncements on the question of governmental immunity. It merely addressed, in that particular factual context, the parallel question of the duty of care. While a duty certainly must exist for there to be liability, the question of governmental immunity does not itself depend upon this determination. That is, a court must find no liability as a matter of law if *either* (a) no duty of care existed, *or* (b) the doctrine of governmental immunity bars the claim.

*Kaisner*, 543 So. 2d at 734. In this case, the Court addresses only sovereign immunity.

9

seized suspected rabid animals and isolate and quarantine or humanely euthanize and provide for laboratory examination, as outlined in the guidebook, Rabies Prevention and Control in Florida." Fla. Admin. Code r. 64D-3.040(3)(b) (2012). The Rabies Prevention and Control guidebook sets out guidelines for determining whether a particular animal or animal carcass should be seized and tested for rabies, but it leaves the ultimate decision to the investigating officer.[7] (Doc. 133-4, pp. 43–44.) Importantly, the guidebook expressly permits County officials to seize and test the remains of animals killed in altercations, even in non-bite situations and even if their rabies vaccinations are current. (*See id.* at 44 ("Animals killed during attacks, euthanized, or dying after capture should be tested as soon as possible so decisions regarding treatment of the exposed individual is not delayed any longer than necessary.").) Accordingly, the FDOH guidelines directly contradict Plaintiffs' argument that the County was not authorized to secure Laila's remains without first ensuring that Laila had bitten Lewis and that her vaccinations were outdated. If the Court were now to hold the County liable in tort for acting within the bounds of the FDOH's established rabies guidelines, "it inappropriately would entangle itself in fundamental questions of policy and planning" best left to the legislative and

---

[7] In determining whether discretionary immunity attaches to a government actor's conduct, "it is the nature of the conduct, rather than the status of the actor" that controls. *Trianon*, 468 So. 2d at 918. Even "low echelon employee[s]" can make discretionary decisions on behalf of a government entity if the government authorizes them to do so on its behalf. *Carter v. City of Stuart*, 468 So. 2d 955, 957 (Fla. 1985) (holding that an animal control officer's decision not to impound a dangerous dog was a discretionary, planning-level decision made on behalf of the city and was entitled to sovereign immunity); *see also Everton v. Willard*, 468 So. 2d 936, 937 (Fla. 1985) (holding that the "decision of whether to enforce the law by making an arrest is a basic judgmental or discretionary governmental function that is immune from suit, regardless of whether the decision is made by the officer on the street, by his sergeant, lieutenant or captain, or by the sheriff or chief of police").

executive branches. *Kaiser*, 543 So. 2d at 737. The County is therefore entitled to sovereign immunity from the alleged tortious conduct arising out of its decision to seize Laila's body and prepare it for rabies testing.

The County is likewise entitled to discretionary immunity from tort claims arising out of its decision to incinerate those portions of Laila's remains which were not necessary to rabies testing. Currently, a reliable rabies diagnosis requires examination of the suspected animal's brain tissue; "there are no conclusive antemortem diagnostics available." (Doc. 133-4, p. 36.) The FDOH bears the ultimate responsibility for rabies testing, but the County assists by removing the suspected animal's brain, packaging it, and forwarding it to the FDOH. (*See* Doc. 113-1, pp. 7–9, 24–32.) The County's pre-testing responsibilities include disposal of animal remains not used in testing and, to conserve its limited resources, the County chooses to do so by incinerating them collectively. (*See* Doc. 142-6, pp. 32–34.) This is an executive, planning-level decision that is discretionary in nature, and thus the County is immune from tort liability arising out of it. *See Carter v. City of Stuart*, 468 So. 2d 955, 957 (Fla. 1985) (holding that discretionary immunity attaches to a government entity's choices on how to tailor its police practices to its budgetary constraints).

In sum, all of the County's challenged acts in this case were discretionary in nature and therefore immune from suit under Florida law, and thus the County is entitled to summary judgment on all claims against it.

### III.     The City of Ocoee

Finally, the City of Ocoee moves for summary judgment on all claims against it. (Doc. 105.) Plaintiffs bring a § 1983 municipal liability claim against the City (Doc. 48,

11

¶¶ 70–86), as well as five state-law tort claims: trespass to chattel, conversion, negligent training, negligent supervision, and negligence (*id.* ¶¶ 87–144, 155–64).

Nearly all of the claims are derivative of those against Lewis such that the Court's decision to grant summary judgment in Lewis' favor also compels it to grant summary judgment in favor of the City. First, Plaintiffs' § 1983 claim proceeds on unconstitutional policy and failure-to-train theories (*see* Doc. 128, pp. 15–19), both of which require an underlying showing of a constitutional deprivation. *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."). The Court's earlier finding that Lewis' conduct was constitutional therefore forecloses this claim.

Regarding the tort claims, the trespass to chattel and conversion claims are the same as those that were raised against Lewis; Plaintiffs simply raised them against the City in the alternative in case Lewis was found to be immune from suit pursuant Florida Statutes § 768.28. (*See* Doc. 48, ¶¶ 91, 105; Doc. 128, p. 20.) The City is entitled to summary judgment on those claims for the same reason that Lewis is—his conduct did not rise to the level of trespass to chattel or conversion. *See supra,* at 7.

Similarly, Plaintiffs' negligent training and negligent supervision claims require a showing of some underlying tortious conduct committed by an employee. *Footstar Corp. v. Doe*, 932 So. 2d 1272, 1278 (Fla. 2d DCA 2006); *Gutman v. Quest Diagnostics Clinical Labs., Inc.*, 707 F. Supp. 2d 1327, 1331 (S.D. Fla. 2010). As Lewis' underlying conduct was not tortious, the City is entitled to summary judgment on the negligent training and supervision claims as well.

The remaining negligence claim is the only claim against the City that does not

involve Lewis. (*See* Doc. 48, ¶¶ 155–64.) Specifically, Plaintiffs claim that the City acted negligently by failing to stop the County from seizing and testing Laila's remains. (*See* Doc. 128, p. 20.) This claim is factually unsupported, and, in any event, negligent enforcement of a police power is not a cognizable cause of action under Florida law. *See Trianon Park Condominium Association, Inc. v. City of Hialeah*, 468 So. 2d 912, 919–20 (Fla. 1985). The City is therefore also entitled to judgment in its favor on this final claim.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant City of Ocoee's Motion for Summary Judgment (Doc. 104) is **GRANTED**.

2. Defendant, Jerry Morgan Lewis, a/k/a Jeremy M. Lewis' Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 105) is **GRANTED**.

3. Defendant, Orange County's Dispositive Motion for Final Summary Judgment as to Orange County (Doc. 107) is **GRANTED**.

4. The Clerk is **DIRECTED** to enter judgment in favor of Jerry Morgan Lewis, the City of Ocoee, Florida, and Orange County, Florida, and against Plaintiffs Mitchell Schutt, Jackie Schutt, K.S., and M.S.

5. The Clerk is **DIRECTED** to close the case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 7, 2014.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record